# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10602

JOSE LUIS HERNANDEZ,

      Plaintiff – Appellant,

v.

RESULTS STAFFING, INCORPORATED,

      Defendant – Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**

January 30, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:14-CV-182

Before HIGGINBOTHAM, ELROD, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Jose Luis Hernandez, a member of the United States Army Reserves, was terminated by his employer, Results Staffing, Inc., after he failed to appear for work following a brief absence for military duty. Hernandez claims his termination violated his rights under the United States Employment and Reemployment Rights Act of 1994. Hernandez appeals the district court's judgment and award of costs in favor of his employer. Because we conclude

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10602

that Hernandez was entitled to reemployment under the Act's convalescence provision, we REVERSE the district court's judgment, VACATE the award of costs, and RENDER judgment in favor of Hernandez on his reemployment claim. We REMAND this case to the district court to determine Hernandez's damages and for other proceedings consistent with this opinion.

I.

Defendant-Appellee Results Staffing, Inc. (Results) is a staffing company that is retained by third parties to provide daily workers for unskilled labor positions. Plaintiff-Appellant Jose Luis Hernandez was employed by Results for approximately six months before Results terminated his employment. Before he began working for Results and throughout the course of his employment with the company, Hernandez was an officer in the United States Army Reserves. This case arises out of Results's termination of Hernandez's employment following a weekend during which Hernandez was on military reserve duty.

On Tuesday, July 9, 2013, Hernandez informed Results that he needed the upcoming Friday off to travel to his weekend military service training. Results provided Hernandez with the day off and also informed him of an important meeting to be held the following Monday morning. Hernandez attended the military training which began on Friday, July 12, 2013. On Sunday, July 14, 2013, while still at his military training, Hernandez spoke on the phone with his immediate supervisor at Results, Don Thompson, about the meeting to be held the next morning. Thompson informed Hernandez of the meeting's location and that it was scheduled to begin at 5:00 a.m. The district court found that this communication led Thompson to believe that Hernandez would be at work at 5:00 a.m. on Monday, July 15, 2013.

Following his conversation with Thompson, Hernandez went to a military medical staff member to report an aggravation of a pre-existing back

2

injury due to the activities of the drill weekend. After receiving treatment, Hernandez attended a unit senior staff meeting. Following the meeting, at approximately 7:30 p.m., Hernandez was released from service and began the four-and-one-half-hour drive home.

Hernandez arrived home at about 12:00 a.m. on the morning of Monday, July 15, 2013. As he went to sleep, Hernandez set his alarm for 4:30 a.m. and took prescribed pain medication for his back pain. He later awoke at 7:00 a.m. to discover he had slept through his alarm and was in severe pain. Hernandez's wife transported him to the hospital emergency room. At 7:28 a.m., Hernandez sent a text message to Thompson and informed him he would not be reporting to work because he was seeking treatment for back pain. At the hospital, Hernandez received medication to relax his muscles and was eventually released. He returned home and rested for the remainder of the day.

Hernandez reported to work the next morning, Tuesday, July 16, 2013, at 8:00 a.m. at Results's Garland, Texas office. At around 10:00 a.m., Results asked Hernandez to drive to a different office, where the Results human resources manager subsequently terminated Hernandez's employment for violation of the company's "no call/no show" policy, which requires employees to call in four hours before a scheduled start time if they are unable to report to work.

Hernandez subsequently filed this lawsuit against Results, seeking damages for a violation of the United States Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq.*, which protects persons temporarily serving in the United States military from discrimination, retaliation, and adverse employment actions as a result of their absence from work for military service. Hernandez argued in the district court that under 38 U.S.C. § 4312, he qualified for reemployment following his weekend military service, and Results wrongly denied him reemployment. Hernandez argued in

3

No. 15-10602

the alternative that, to the extent he was reemployed and then terminated, such termination violated 38 U.S.C. § 4311, which protects against discrimination.

Following a bench trial, the district court found that Results did not violate § 4312 because Hernandez did not report as required on Monday, July 15, 2013. The district court also found that Results did not violate § 4311 because it did not consider Hernandez's military service in terminating his employment and would have terminated his employment regardless of such service. The district court entered an order and final judgment with costs in favor of Results. Hernandez timely filed a notice of appeal.

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Bd. of Trs. New Orleans Emp'rs Int'l Longshoremen's Ass'n v. Gabriel, Roeder, Smith & Co.*, 529 F.3d 506, 509 (5th Cir. 2008) (quoting *Water Craft Mgmt., LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006)). "A finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony." *Id.*

## III.

Section 4312 of USERRA states that an employee "whose absence from a position of employment is necessitated by reason of service in the uniformed services" is entitled to reemployment rights and benefits[1] if he "reports to" his employer "in accordance with the provisions of subsection (e)." 38 U.S.C.

---

[1] The rights and benefits bestowed under § 4312 are set forth in § 4313, which states that the employer must reemploy the person in the position he would have held but for the service, or if not qualified for that role, in the position he formerly held. 38 U.S.C. § 4313(a)(1).

No. 15-10602

§ 4312(a).[2] For most employees whose period of service was less than thirty-one days, subsection (e) requires the employee, "upon the completion" of his service, to "notify [his] employer" of his "intent to return" by "reporting to the employer," either

> (i) not later than the beginning of the first full regularly scheduled work period on the first full calendar day following the completion of the period of service and the expiration of eight hours after a period allowing for the safe transportation of the person from the place of that service to the person's residence; or

> (ii) as soon as possible after the expiration of the eight-hour period referred to in clause (i), if reporting within the period referred to in such clause is impossible or unreasonable through no fault of the person.

*Id.* at § 4312(e)(1)(A). However, subsection (e) also contains a provision which extends the reporting period for employees who sustain injuries during their military service:

> A person who is hospitalized for, or convalescing from, an illness or injury incurred in, or aggravated during, the performance of service in the uniformed services shall, at the end of the period that is necessary for the person to recover from such illness or injury, report to the person's employer . . . .

*Id.* at § 4312(e)(2)(A).

Hernandez contends that due to his back injury, he was not required to report to work until Tuesday, July 16, 2013, under § 4312(e)(2)(A)'s convalescence provision. He argues that when he reported to work on July 16, he was entitled to reemployment rights and that his subsequent termination by Results later that day for failure to comply with the company's "no call/no

---

[2] Section 4312 sets forth two additional requirements for an employee to qualify for reemployment. First, the employee must provide "advance written or verbal notice of such service to such person's employer," and second, "the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years." 38 U.S.C. § 4312(a)(1)—(2). The parties do not dispute that Hernandez meets both of these requirements.

5

show" policy violated § 4312. We conclude that Hernandez timely reported to Results under the convalescence provision of § 4312(e)(2)(A) and that Results violated Hernandez's reemployment rights when it terminated him effective July 15, 2013.[3]

The undisputed facts in this case demonstrate that Hernandez aggravated a pre-existing back injury during his military service. Hernandez began to experience discomfort in his back while still on duty and sought medical attention from military medical staff members. When Hernandez awoke at home on the morning of Monday, July 15, 2013, he was in severe pain and was unable to walk. Hernandez was taken to the hospital where he received pain killers and muscle relaxers, and he spent the remainder of the day convalescing at home. A note from Hernandez's physician indicated that, due to the time needed to recover, Hernandez was medically excused from work until Tuesday, July 16, 2013.

On the morning of July 16, after his period of convalescence had ended, Hernandez reported to work at Results' Garland, Texas office. The facts in this case demonstrate that Hernandez could not have reported on July 15 because the service-related aggravation of his injury prevented him from doing so. Even if Results required Hernandez to report to work on July 15, Hernandez was excused from reporting by the plain language of § 4312(e)(2)(A) because he was "convalescing from[ ] an . . . injury . . . aggravated during[ ] the performance of

---

[3] Hernandez also argues that he timely reported in accordance with § 4312(e)(1)(A)(i), which requires a person to report "not later than the beginning of the first full regularly scheduled work period on the first full calendar day following the completion of the period of service and the expiration of eight hours after a period allowing for the safe transportation" home. The parties dispute how we should interpret § 4312(e)(1)(A)(i)'s "first full calendar day" provision. Because we conclude that Hernandez timely reported under § 4312(e)(2)(A)'s convalescence provision, we need not reach the issue of how to construe § 4312(e)(1)(A)(i)'s "first full calendar day" provision.

service" and he was not required to report to work until "the end of the period that [was] necessary for" his recovery. 38 U.S.C. § 4312(e)(2)(A). Results's failure to reemploy Hernandez when he reported after his period of convalescence ended violated § 4312(a). The district court erred by failing to address whether Hernandez satisfied the reemployment requirements of § 4312(e)(2)(A)'s convalescence provision in light of the undisputed evidence pertaining to Hernandez's back injury. *See Bd. of Trs.*, 529 F.3d at 509.

Results argues that the July 14 telephone conversation between Hernandez and Thompson constituted Hernandez "reporting" to Results for purposes of § 4312.  Results contends that because Hernandez reported on July 14, Results reemployed him as of that date, and the effect of any convalescence on his reporting requirement is irrelevant. We disagree. Results's position overlooks the plain language of § 4312, which requires an employee to report to his employer and notify them of his intent to return "*upon the completion* of [his] period of service in the uniformed services[.]" 38 U.S.C. § 4312(e)(1) (emphasis added); *see also New Orleans Depot Servs., Inc. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 393 (5th Cir. 2013) ("[T]he first rule of statutory construction is that we may not ignore the plain language of a statute."). When Hernandez spoke on the telephone with Thompson on July 14, Hernandez's reserve duty had not yet ended—following the telephone conversation, Hernandez attended a senior staff meeting. Hernandez was not formally released from his reserve duties until approximately 7:30 p.m.— several hours after the telephone conversation took place. Hernandez did not and could not "report to" his employer pursuant to § 4312(e)(1) during the July 14 afternoon telephone conversation because he was not yet released from his service. When that release would occur was up to the military, not Hernandez. While a member of the military might have an expectation of being released at

No. 15-10602

a particular time, that expectation is always subject to the military's right to extend service until it determines that release from service is appropriate.[4]

Results also argues that Hernandez did not qualify for reemployment under § 4312(e)(2)(A)'s convalescence provision because the provision only extends the reporting period until "the end of the period that is necessary for the person to recover," and Hernandez has not provided evidence as to the period that was necessary for his alleged recovery. However, a careful review of the record reveals that this is not the case. At trial, Hernandez offered his own testimony, the testimony of his wife, and a note from his physician to demonstrate that his convalescence lasted until the morning of July 16. Hernandez testified that on July 15, he was admitted to the emergency room and that he received muscle relaxer, pain killers, and an IV as the doctors monitored him to see how long it would take for his muscles to relax. Hernandez's wife testified that after Hernandez was discharged from the hospital, he was "sleepy" and returned home and slept. She also testified that she took the day off of work to care for Hernandez. Finally, Hernandez submitted a note from his physician into evidence, which said, "Jose Hernandez was under my care on July 15, 2013. He will be able to return to

---

[4] The parties spend a considerable portion of their briefs arguing about whether the "reporting to" requirement of § 4312 may be satisfied by an employee telephoning his employer or whether the employee must physically report to his employer in person. As noted, we reject Results's argument that a telephone call placed *before* Hernandez's release from duty satisfied § 4312's "reporting to" requirement such that § 4312(e)(2)(A)'s convalescence provision is "irrelevant." This is especially appropriate because the district court expressly declined to find that Hernandez promised to be at work on July 15 at 5:00 a.m. However, we decline to opine on whether it is possible for an employee to satisfy the reporting requirement of § 4312 with a short telephone call to his employer when that call is placed after his release from military service. Further, Results relies on the district court's finding that during the telephone call, Hernandez led Results to believe that he would be at work at 5:00 a.m. on Monday morning. But we have determined that Hernandez was legally entitled to return to work at his customary time on Tuesday, July 16, when his period of convalescence had ended. Results's expectation that Hernandez might report to work earlier than that time is irrelevant.

work on July 16, 2013." As Results acknowledged at oral argument, none of this evidence is disputed. We therefore conclude that Hernandez did provide evidence that his convalescence lasted until the morning of July 16 such that Hernandez qualified for reemployment under § 4312(e)(2)(A).

Finally, Results argues that even if Hernandez's arrival on July 16 constituted timely "reporting" under § 4312, Results complied with USERRA by reemploying Hernandez on July 16 and then subsequently terminating him that same day. It is true that "§ 4312 'only entitles a service person to immediate reemployment and does not prevent the employer from terminating him the next day or even later the same day.'" *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 304 (4th Cir. 2006) (quoting *Jordan v. Air Prods. & Chems., Inc.*, 225 F. Supp. 2d 1206, 1208 (C.D. Cal 2002)).[5] However, in order to comply with § 4312, an employer must actually reemploy the service person in good faith. *See Petty*, 687 F.3d at 718 (asking whether the defendant employer "*truly* reemployed" the plaintiff service member) (emphasis added); *see also Vahey v. Gen. Motors Co.*, 985 F. Supp. 2d 51, 60 (D.D.C. 2013) (collecting § 4312 cases and emphasizing that the cases "anticipate a situation where the veteran was *actually reemployed* in good faith, with at least the *possibility* of continued employment of indefinite length").

Results contends that it terminated Hernandez's employment on July 16 because Hernandez had reported to the wrong location that morning. But the record evidence clearly contradicts Results's position. As the district court found and as evidenced by the termination letter dated July 15, 2013, the

---

[5] "The apparent harshness of this result is addressed by the fact that §§ 4311 and 4316 operate to protect the employee as soon as she is reemployed." *Francis*, 452 F.3d at 304. Once a veteran is rehired, §§ 4311 and 4316 protect him from discrimination, but allow an employer to terminate him so long as the employer can show "cause" unrelated to the veteran's military service. *See* 38 U.S.C. §§ 4311, 4316(c); *see also Petty v. Metro. Gov't of Nashville & Davidson Cty.*, 687 F.3d 710, 718 (6th Cir. 2012).

decision to terminate Hernandez was made on July 15. Thus, Results made its decision to terminate Hernandez before the date on which Results claims to have reemployed him. Allowing an employer to engage in a sham reemployment so that it can terminate an employee that it never intended to reemploy would stand in stark contradiction with the reemployment protections that USERRA provides to service members. *See Petty*, 687 F.3d at 718. We therefore conclude that Results did not reemploy Hernandez on July 16 in a manner that satisfied its obligation under § 4312.[6]

## IV.

In sum, we conclude that Hernandez qualified for reemployment under the plain language of § 4312(e)(2)(A)'s convalescence provision when he aggravated a pre-existing back injury during military service and when he reported to work on Tuesday, July 16, 2013, at the end of his period of convalescence. Results's failure to reemploy Hernandez after his period of convalescence violated § 4312. We therefore REVERSE the district court's judgment and VACATE the award of costs in favor of Results[7] and RENDER judgment in favor of Hernandez on his reemployment claim. We REMAND this

---

[6] In the district court, Hernandez argued as an alternative theory that if he was reemployed by Results and then subsequently terminated, his termination violated 38 U.S.C. § 4311. Section 4311 applies when an employee's termination is motivated by his military service. Because we have concluded that Results failed to reemploy Hernandez in violation of § 4312, we need not decide Hernandez's § 4311 claim.

[7] Hernandez argues that the district court erred as a matter of law by finding him responsible for court costs incurred by Results. Because we render judgment in favor of Hernandez, Results is no longer the prevailing party and so Results is no longer entitled to costs. We therefore need not reach the issue of whether the district court's award of costs in favor of Results was appropriate. We note, however, that were we to reach this issue, we would be hard-pressed to determine that this award was not plain error. USERRA's fees and court costs provision explicitly states that "[n]o fees or court costs may be charged or taxed against any person claiming rights under this chapter." 38 U.S.C. 4323(h)(1); *see also Chance v. Dallas Cty. Hosp. Dist.*, 176 F.3d 294, 296 (5th Cir. 1999) ("[O]ne claiming rights under USERRA . . . may not be taxed costs; the statute clearly so provides, and we previously have so held.").

case to the district court to determine Hernandez's damages and for other proceedings consistent with this opinion.